[Civ. No. 7570.   Third Dist.   June 14, 1949.]

J. M. RICH, Appellant, v. RIVERBANK CANNING
COMPANY (a Corporation), Respondent.

A. G. Bailey and John A. Young for Appellant.

Johnson & Davies, F. M. Brack and Robert H. Schwab, Jr.,
for Respondent.

ADAMS, P. J.—Appellant Rich sued defendant Riverbank
Canning Company to recover damages for the failure of de-
fendant to take and pay for a crop of tomatoes grown by
appellant in 1944, for the purchase of which defendant had
contracted. It was alleged in plaintiff's complaint that defend-

ant had agreed to furnish plaintiff with picking boxes at his field, but had failed to furnish a sufficient number, and that as a result 1,289 tons of plaintiff's tomatoes were undelivered, resulting in a loss to him of some $20,624, for which sum he prayed judgment.

Defendant, in its amended answer, incorporated the contract between the parties, denied that it had failed to furnish picking boxes, alleged that it had taken from plaintiff more than his pro rata share of the total amount of tomatoes defendant could handle, and set up as a further defense that by reason of a shortage of labor it had been unable to pack the entire quantity of tomatoes which its existing facilities would otherwise have been adequate to handle, and that, by reason of the provisions of the contract, it was excused from accepting delivery of more tomatoes from plaintiff than it actually did accept.

Section 13 of the contract which defendant relied upon provided: "In case of fire, strikes or other labor disturbances, lack of transportation facilities, . . . *shortage of labor* or supplies, . . . or any unavoidable casualty or cause beyond the control of Buyer, affecting in any way the conduct of Buyer's business or canning operations, including any obligation on Buyer's part to transport the tomatoes covered hereby, *or to furnish boxes therefor*, Buyer will be excused from performance hereunder during the period that Buyer's business or canning operations are so affected, and Buyer may, during such period, accept such portion of such tomatoes as Buyer, in its judgment, can economically handle." (Italics added.)

After trial of the issues raised by the pleadings the trial court rendered judgment for defendant pursuant to findings in its favor. The findings recite that defendant furnished plaintiff boxes for the delivery of 1248.543 tons of tomatoes, but that it was not true that it "wholly failed, neglected and refused to deliver any greater number of boxes though often requested and demanded by the plaintiff"; also, "That it is not true that except for defendant's refusal to furnish picking boxes the plaintiff would have delivered to the said defendant more than 1289 tons of tomatoes over and above the 1248.543 tons so delivered as aforesaid at the contract price of $25.00 per ton, or $32,225.00 worth of tomatoes; that it is not true that the plaintiff's cost of picking, harvesting, and delivering said tomatoes to the defendant at his roadside would not have exceeded $9.00 per ton, or $11,601.00; that it is not true that plaintiff, as a direct and proximate result of defend-

ant's refusal, neglect and failure to deliver said picking boxes as aforesaid has suffered loss and damage in the sum of $20,624.00, or in any other sum or at all.''

The court then found that because of a shortage of labor defendant was able to operate only a small part of its canning facilities; that it could, with sufficient labor, have packed 141,000 tons of tomatoes but was only able to pack 40,434 tons; that it took delivery of more than plaintiff's pro rata share of the total amount of tomatoes of which it accepted delivery, and that by reason of section 13 of the contract it was excused from accepting delivery of more tomatoes than it did accept.

There was also a finding that defendant gave plaintiff notice that because of labor shortage it could not take delivery of plaintiff's whole crop; that other canneries were seeking tomatoes, and defendant requested plaintiff to sell to others such of his tomatoes as defendant could not take, and brought to plaintiff a representative of another cannery who offered to buy plaintiff's excess, but that plaintiff refused to sell even though he knew defendant could not take all of his crop, a portion of which was spoiling; that it was plaintiff's duty to sell to others when opportunity was presented and thus minimize defendant's damages, and that had plaintiff done so he would have suffered no damage. And, finally: ''That it is true that defendant was excused from performance in full of said contract because of said labor shortage at the Cannery which was beyond the control of defendant; that it is true that defendant did everything humanly possible to obtain the necessary labor and exercised due and proper diligence to comply with all of its obligations under said contract.''

On this appeal plaintiff contends first that the fifth finding of the trial court is in fact two findings in the form of negative pregnants which will not support the judgment rendered; second, that the evidence does not support the defense of labor shortage; and, third, as to the finding that plaintiff should have sold to others and mitigated damages, that defendant refused to give plaintiff a written release, that it was itself glutting the market leaving none for plaintiff, that defendant at no time advised plaintiff of the extent of its inability to furnish boxes, but instead kept promising plaintiff it would do better, and that the contract provided that title to plaintiff's tomatoes passed to defendant on the signing of the contract.

Respondent replies that, while the first portion of the fifth finding might, standing alone, constitute a negative preg-

nant, as a whole it does not, because of the latter portion; that other findings show that plaintiff lost nothing by virtue of any act or failure to act by defendant; that if it be assumed that by reason of the negative pregnant there is a finding that plaintiff lost $20,624 there is no finding that it was caused by defendant's acts or conduct, since the other findings show it was not; and that, at most, the negative pregnant findings are on an immaterial issue.

We are constrained to agree with respondent on this latter point; for if, as the court found, complete performance on the part of respondent was excused because of an acute labor shortage, which, by the very terms of the contract, constituted a valid excuse for incomplete performance, it is immaterial that appellant suffered financial loss by reason of respondent's failure to take his entire crop. The important question then is whether there is evidence in the record to support the finding regarding such alleged labor shortage and the finding that respondent took delivery of a fair pro rata share of appellant's crop.

The weight of the evidence and the credibility of the witnesses were matters for the determination of the trial court, and, on this appeal, though the testimony is conflicting, we are compelled to consider it in the aspects most favorable to the winning party and the findings of the trial court. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689] ; *Estate of Teel,* 25 Cal.2d 520, 527 [154 P.2d 384] ; *Fackrell* v. *City of San Diego,* 26 Cal.2d 196, 207 [157 P.2d 625, 158 A.L.R. 625].)

Thus considered it shows that Riverbank, in 1944, installed additional equipment which increased its potential capacity; that thus equipped it could have processed 1,800 tons of tomatoes daily; that it had more than enough picking boxes; that because of a labor shortage it was never able to operate its plant to capacity; that the principal reason for the labor shortage was the general manpower shortage during the war, which was particularly felt in agricultural regions where laborers could secure work in agricultural pursuits and were not subject to deductions for various taxes imposed in industrial pursuits; that Riverbank used all reasonable means to secure necessary labor by hiring cars and buses for transportation from towns, securing delay in the opening of at least one high school in order to employ its students, tried to secure enlisted men from Army camps, kept in touch with United States employments services, inserted advertisements

in publications, distributed printed dodgers, set up contests for prizes for employees who remained two weeks or longer, and employed housewives; that the labor shortage limited not only its canning output, but affected its handling of tomatoes arriving at the plant so that large quantities of them accumulated on trucks and loading platforms and thus delayed emptying of boxes and their return to growers; that it attempted to distribute boxes equitably among the growers as the needs of each demanded where such needs varied from time to time; and that it diverted some of the tomatoes contracted for to other canneries, and released some, and offered to release other growers, including plaintiff, so they might sell some of their crop to others.

While there is evidence contradictory of some of the foregoing testimony, and it may well be said that respondent contracted for tomatoes which it should have foreseen it would be unable to utilize, and that many of the growers with whom it had contracted, including plaintiff, sustained losses because defendant did not take their available crops, since the trial court has found that defendant was excused from performance in full of said contract because of said labor shortage which was beyond its control, and that it did everything humanly possible to obtain necessary labor, and that it exercised due and proper diligence to comply with all of its obligations to plaintiff under its contract, this court must abide by such findings, there being no lack of testimony to sustain them.

Since the findings of the trial court establish that respondent was excused from performance of its contract because of labor shortage and appellant is therefore not entitled to recover any damages from respondent, the amount of plaintiff's losses and the question whether he took proper steps to mitigate damages become immaterial on this appeal; and it need not be determined whether or not the findings claimed to be in the form of negative pregnants are construed as findings that appellant could have delivered more or less tomatoes had he been furnished more boxes, or as constituting findings of the amount of appellant's loss.

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.