[Civ. No. 16418. First Dist., Div. One. June 21, 1955.]

PHILIP WOOD, Appellant, v. COUNTY OF SANTA CRUZ, Respondent.

714

Lucas, Wyckoff & Miller for Appellant.

Grunsky & Pybrum for Respondent.

BRAY, J.—Plaintiff appeals from a judgment in favor of defendant upon a directed verdict. At the close of the trial the trial court stated: "the defendant's motion for a directed verdict is granted, not on the first ground stated, that is, with respect to the provisions of the Public Liability Act, but it is granted upon the ground that there is a total failure to establish or sustain the essential allegations of the complaint in respect to the claimed negligence attributed to the defendant by the plaintiff, and secondly, that there is a fatal variance between the allegations of the complaint and the testimony, and the evidence is wholly insufficient to establish the allegations of the complaint."

## QUESTIONS PRESENTED

1. Insufficiency of evidence to show negligence of defendant.
2. Variance. 3. Was plaintiff contributively negligent?

EVIDENCE

About 6 p.m. September 8, 1952, plaintiff, an experienced motorcycle driver, was driving his English-type motorcycle along a Santa Cruz county road at a speed of about 30 miles an hour. The weather was clear and dry. The particular portion of the roadway was in shadows. Plaintiff had frequently made this trip before. His motorcycle was small, not equipped with foot guards, and with only pegs on which to rest his feet. Riding, the operator's feet are back at a 30-degree angle on the pegs, with the ends of the toes only about 4 inches from the ground. At a described spot, while plaintiff was riding on the paved portion of the road, about 18 to 24 inches from the edge of the highway and while looking straight ahead and seeing no obstruction, plaintiff's foot was pierced by a piece of wood or stick. The top of the wood was jagged, appearing to have been recently broken. One end of the wood appeared to have been cut by a sharp instrument. According to his doctor it was wedge shaped, $3/4$ inch by $1\frac{1}{2}$ inch. Apparently it had bark on it. According to plaintiff, the stick was approximately $5/8$ inch in diameter. The piece of wood remained in plaintiff's foot protruding several inches from the instep. Plaintiff was taken to a hospital where the wood was removed. Unfortunately the nurse discarded the piece removed.

On August 4th and 5th a county road crew had cut brush and overhanging branches along this road, including the point at which the accident occurred. The road crew picked up a portion of the brush so cut and left the balance alongside the road (off the pavement) to be picked up by the regular crew after the oiling season, which would be any time in the fall.

The evidence as to whether there were branches or brush left on the paved portion of the road was conflicting. Taking the evidence favorable to the plaintiff, as we are required to do in the case of a directed verdict, the following appears:

Plaintiff testified that a few days after the accident he visited the scene; that adjacent to the road at the point of the accident was an acacia tree growing on a steep bank. The cut branches at that point were apparently from that tree. The bank was fairly littered with cut brush which evidently had been cut about a couple of weeks. There were small branches lying out on the paved portion of the road.

One Jacobson, residing about 150 feet along the road from

the point of the accident, testified that in the early part of August, the crew cutting the brush just left the cuttings lay where they cut them. The cuttings were dropped down on the edge of the road. There was quite a pile there. Photographs were shown him and he identified the condition there shown as the condition at the time of the accident. These show a steep bank immediately adjacent to the paved portion of the highway, with cut brush piled against it, the ends of small branches of which are at the edge of the pavement and in two instances at least protrude onto the payment. This brush remained there until sometime after the accident.

Mrs. McNeely, living further along the road, likewise identified the photographs as showing the condition about the time of the accident. In the latter part of July and first week in August, she saw the road crews cutting brush along the road. They dropped the cuttings where they cut them. She and her youngsters had to walk around the branches lying on the paved portion of the road.

Opposed to this evidence was the testimony, among others, of four crew members and the county road commission foreman who did the cutting, to the effect that no brush was left on the road. However, most of them testified that in piling brush it was done in places where there was considerable width between the pavement and the bank. The photographs show that at least at the point of the accident their testimony in this respect was incorrect. Another foreman admitted that he could not say for sure whether there was or was not some brush left on the paved portion of the highway. One of the crew members testified that two trucks followed the workers and picked up all of the brush so none was thrown to the side of the road. This testimony was contradicted not only by the photographs and plaintiff's witnesses but by all the other defense witnesses. Also, in the week preceding the accident while making his daily trip plaintiff observed no branches or brush in the roadway.

Thus, there was evidence from which the jury might have found that in cutting the brush defendant negligently failed to remove it from the highway and that the piece which entered plaintiff's foot came from that brush. Did this state a

## CAUSE OF ACTION?

We think it did. Sections 53050 and 53051, Government Code, provide for tort liability of a county concerning its highways, providing, in effect, that a county "is liable for

injuries to persons and property resulting from the dangerous or defective condition'' of its highway if ''the legislative body, board, or person authorized to remedy the condition: (a) Had knowledge or notice of the defective or dangerous condition. (b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.'' Here the evidence was such that a jury might have found that a dangerous condition had been created under county supervision by the cutting of branches and allowing them to remain near and on the highway. As the work was done under the supervision of those in charge of the highway, and moreover, as the condition continued for approximately two weeks before the accident, there can be no question of knowledge.

In *Fackrell* v. *City of San Diego*, 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 773], the plaintiff was injured when the sidewalk on which she was walking collapsed. The question was whether evidence supported the finding that a dangerous condition had been created by the city. In affirming the judgment for the plaintiff, the Supreme Court laid down these rules (p. 203): ''The rule is well established that when it is shown that a certain street and sidewalk improvement had been planned by city officers and constructed in accordance with such plan, and that by carrying out the plan a dangerous or defective condition has been created, *no further proof is needed to charge the city* with notice of that condition. [Citations.]'' (Emphasis added.) ''Where the authorities who have planned and constructed an improvement have knowledge of circumstances which reasonably might be expected to result in a dangerous condition as a natural and probable consequence of the work, *such authorities are put upon inquiry*, and it follows that it is incumbent upon them to make inspections commensurate in scope with the nature and character of their knowledge and the peril which should be avoided.

''As to what constitutes a dangerous or defective condition no hard-and-fast rule can be laid down, but each case must depend upon its own facts. [Citations.] *Whether a given set of circumstances creates a dangerous or defective condition is primarily a question of fact.*'' (P. 206; emphasis added.)

Under the evidence here, it cannot be said as a matter of law that the condition of the road was merely a trivial

defect and not a dangerous condition. As said in *Bigelow* v. *City of Ontario*, 37 Cal.App.2d 198, 204 [99 P.2d 298] : "The question of whether or not a condition in a public street is actually dangerous and a menace to the safety of the traveling public is usually one of fact which is addressed to the triers of facts." See also *Waldorf* v. *City of Alhambra*, 6 Cal.App.2d 522, 526 [45 P.2d 207]; *George* v. *City of Los Angeles*, 11 Cal.2d 303, 308 [79 P.2d 723]. *Schmidt* v. *City of Vallejo*, 122 Cal.App. 5 [10 P.2d 107], cited by defendant, involving injury to a child on a playground slide is not in point, in that it was there held that the minor aspects in which the slide was defective in nowise contributed to the accident, but that the accident was caused by the child improperly using the slide.

## VARIANCE

The complaint alleged that defendant in a grossly negligent manner "permitted the said branches to fall and remain upon the paved portions of said Bear Creek Road so as to constitute an extreme and dangerous hazard to pedestrians and motorists . . . Said branches constituted a particularly dangerous hazard" in that defendant "had stacked said branches in a pile along and upon the said paved portion of said road, and in that at said point the said road is particularly narrow and makes a sharp turn to the right . . . The above described pile of branches was permitted to remain . . . " Plaintiff "drove into and over the said pile of branches. A branch from said pile was thrown into the air by the impact of said motorcycle upon it . . . " At the close of the case plaintiff moved for permission to amend the complaint to conform to the proof, particularly to change the allegation that plaintiff drove into a pile of branches to one stating that he "collided with one of the aforesaid branches which had been negligently permitted to fall down and remain upon the paved portion of said road . . . " The motion was denied. Plaintiff pointed out that not only did the proposed allegations conform to the proof but that defendant was in nowise surprised by the proof as it had taken plaintiff's deposition prior to trial and therefore knew that he claimed to have run into one branch and not a pile of branches. ▮ While the allowance of amendments is in the discretion of the trial court, not to have permitted this amendment, to conform to the proofs, under the circumstances of this case, constituted an abuse of discretion. Moreover, we see no material variance between the allegations of the complaint without amendment and the proof. While a single

branch is obviously not a pile of branches, there is a legal obligation not to knowingly permit a single branch to remain on the highway, if it constitutes a hazardous condition. "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been so misled, the court may order the pleading to be amended upon such terms as may be just." (Code Civ. Proc., § 469.) Being apprised prior to trial by his deposition of plaintiff's position, defendant could not possibly have been misled to his prejudice by this slight variance. Even in the days of great technicality (1867) the court said: "Immaterial variances are to be disregarded on the trial or whenever the question may be presented. This is a most beneficial provision, and should be literally construed and carried out." (*Began* v. *O'Reilly,* 32 Cal. 11, 14.)

### Contributory Negligence

 Based upon the fact that although plaintiff testified he was looking ahead he failed to see the stick which injured him, defendant claims plaintiff was guilty of contributory negligence as a matter of law. Significantly, the trial court did not make contributory negligence a ground of granting the directed verdict. Going at a speed of approximately 30 miles an hour, around a turn where a portion of the highway was in shadow, we cannot say as a matter of law that plaintiff was negligent in not seeing the stick. That question was for the jury.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.