[Civ. No. 24102.   Second Dist., Div. Two.   May 9, 1960.]

ANTONIA DURAN et al., Respondents, v. JAMES HENRY GIBSON et al., Defendants; CITY OF LOS ANGELES, Appellant.

o

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and John A. Daly, Deputy City Attorney, for Appellant.

James D. Garibaldi and Warren J. Lane for Respondents.

FOX, P. J.—This is an action for damages for wrongful death. From an adverse judgment against all the defendants, the city of Los Angeles alone has appealed.

In seeking a reversal the city advances two arguments: (1) That there was no dangerous or defective condition of the public street in question upon which to predicate liability

of the city under the Public Liability Act (Gov. Code, §§ 53050-53056); and (2) that the evidence fails to show that the condition of the street was a proximate cause of the accident.

The plaintiffs' deceased was killed in a collision between his panel truck and a semitrailer truck driven by the defendant Gibson and owned by the defendant Dyer. The accident occurred on a Los Angeles city street known as Wilmington and San Pedro Road, which, at the point where the collision occurred, runs generally north and south, but with a curve to the east. The scene of the accident was on the radius of this curve and about 200 feet from its southern inception. The street is 50 feet wide and paved with asphaltic concrete and is divided in the center by a five foot section of concrete bars set diagonally to the traffic lanes. At the time of the accident, a city owned water tank truck was engaged in flushing dirt and debris from the center divider section of the said street. It was proceeding in a northerly direction at about 5 miles per hour in the lane next to the divider strip. There were no barricades or flagmen to warn of the presence of the slowly moving vehicle or of the wet condition of the pavement. The defendant Gibson was driving an unloaded semitrailer truck in a northerly direction. As Gibson approached the curve he noticed the city truck ahead, and, thinking it was in the right lane, he moved his truck from the right to the left lane in order to pass. Gibson was driving about 30 miles per hour when he noticed the city truck and then reduced his speed to about 27 miles per hour by down-shifting one gear. Gibson testified: "Whenever I first noticed him, he looked like to me, like he was in the right lane, so I moved over to the left so I could go by him. Then as I approached a little bit further just for a few seconds, then I noticed he was in the left lane and then I was in the process of trying to get back over to the right to go past him, when I felt something hit my trailer and knock the truck completely out of control." The rear end of the trailer swung to the left and crossed over the divider strip, striking the panel truck which was being driven southerly by plaintiffs' deceased and killed him. The only tire "brush marks" found by the investigating officer were those of the panel truck. The condition of the street was described as wet with varying degrees of sand and mud in the northbound lanes. An expert witness testified that when asphaltic concrete is wet with some sand on the surface, the "coefficient of friction will range as low as the co-

efficient for tires on smooth ice.'' He further testified that the rear wheels of a semitrailer truck would have a greater tendency to slide sideways under such conditions than they would on dry pavement and that such a truck would have a greater tendency to slide than would an ordinary passenger vehicle. There was evidence that if the operator of a truck applied his brakes on such wet and slippery pavement while executing a turn, it could cause the rear end of the vehicle to go into an immediate skid to the opposite side. However, Gibson testified that he at no time applied his brakes. There was also some testimony that an unloaded trailer on a semitrailer truck will have a tendency to bounce when rounding a curve and thus lose some friction. One witness described the back end of the truck as bouncing when it hit the center bars.

On this evidence, the jury returned a verdict for the plaintiffs and against all the defendants and assessed damages in the amount of $56,000. Judgment was entered on the verdict and the city has appealed.

Liability of the city arises, if at all, under the provisions of section 53051 of the Government Code which reads: ''A local agency is liable for injuries to persons and property resulting from the *dangerous or defective condition* of public property if the legislative body, board, or person authorized to remedy the condition: (a) Had knowledge or notice of the defective or dangerous condition. (b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.'' (Emphasis added.) The major contention made by the city is that flushing debris and dirt from the city streets by the use of a water tank truck is an acceptable method of accomplishing a legitimate function, and, as a matter of law, does not create a ''dangerous or defective condition.'' The city cites cases from sister states which hold that the use of water to remove waste materials from the streets is a lawful and proper function of the municipality. ▓▓ These cases have no application in this state, however, for it is well established that the question of whether or not a condition created by a city is ''dangerous'' is ordinarily a question for the trier of fact. (*Ellis* v. *City of Los Angeles*, 167 Cal.App.2d 180, 185 [334 P.2d 37]; *Barker* v. *City of Los Angeles*, 57 Cal.App.2d 742 [135 P.2d 573].) ▓▓ If the conclusion reached is supported by substantial evidence it will not be disturbed on appeal. (*Irvin* v. *Padelford*, 127 Cal.App.2d 135 [273 P.2d 539].) ▓▓ On this

issue the evidence is ample to establish that a dangerous condition did in fact exist and that it was caused by the acts of the city. According to an expert witness the mixture of sand, dirt and water which was on the northbound lane in which Gibson was driving the semitrailer truck would cause the surface of the roadbed to have about the same coefficient of friction as ice. This evidence, coupled with the fact that the street at the point of the collision curves to the right for a northbound vehicle, supports the jury's implied finding that a dangerous condition existed.

█ It appears to be the city's position that the washing of public streets is a proper governmental function and that the only negligence with respect to the city, if there be any, was the negligence of its employee in the performance of such governmental function of which the city had no notice. The city cites *Watson* v. *City of Alameda,* 219 Cal. 331 [26 P.2d 286], wherein it is said, at page 333: ". . . Reference is made by plaintiff to the special doctrine that notice is unnecessary where the planned improvement is inherently wrong and dangerous (citing cases), but it can have no application to the instant case, where the work planned and the directions given involved no danger to the public, and the defective condition arose solely through the negligence of those doing the work." However, as pointed out by the trial judge in a well-reasoned memorandum opinion in denying the city's motions for judgment notwithstanding the verdict and for a new trial: "There was evidence in the instant case, that the activity of defendant city's employee [was] done with knowledge, and under the direction of a 'person authorized to remedy the condition,' and, from which the jury could find, and by its verdict must have found, created a dangerous condition."

Two recent cases appear apposite: *Teilhet* v. *County of Santa Clara,* 149 Cal.App.2d 305 [308 P.2d 356], and *Wood* v. *County of Santa Cruz,* 133 Cal.App.2d 713 [284 P.2d 923]. In the Teilhet case (p. 307) the county was held to have created a dangerous condition upon a public road by burning weeds adjacent to the highway, thereby obscuring the road by clouds of thick smoke drifting across. The county had provided flagmen to warn approaching motorists but the evidence showed that little or no warning was actually given. The court held that a local agency is liable under the Public Liability Act for both "condition" negligence and "activity or conduct" negligence and that the condition of public prop-

erty "may be rendered 'dangerous' within the meaning of the section [Gov. Code, § 53051] by 'the use or general plan of operation of government operated property, as well as by a structural defect' (citations).'' The evidence in the instant case discloses that the cleaning operations in progress at the time of the accident were an integral part of a plan of operation employed by the city for street maintenance and thus within the rule of the Teilhet case. Therefore, the question of whether these operations created a "dangerous" condition was for the jury.

In the Wood case, the plaintiff was injured while driving his motorcycle on a county road. The injury was occasioned by a branch left on the paved portion of the road by a county crew which had trimmed the trees lining the highway. The branch struck and pierced the plaintiff's foot. The trial court directed a verdict for the defendant and judgment was entered thereon. In reversing the judgment, the District Court of Appeal held that the evidence was sufficient to support a finding that the county had created a "dangerous" condition within the purview of the Public Liability Act and that the determination of such fact was within the province of the jury. Obviously, the trimming of trees adjoining a public road is as much a legitimate function of local government as is cleaning the streets. Both activities are proper as long as they are carried out in a manner which does not create a hazard to the public. But in both the Wood case, and the instant case, a hazard was created and a member of the public injured as a result. There is no practical difference between the conduct of the county in the Wood case, consisting of leaving brush piled on the roadway, and the conduct of the city in the present case whereby wet and slippery sand and debris was left on the traveled portion of the highway. Likewise, there is a close factual analogy between the hazards created by drifting smoke as in the Teilhet case and the dangerously slippery condition of the pavement in the instant case. Therefore, it may not be said, as a matter of law, that no dangerous condition was created by the city.

The city's second argument is that there is no evidence to support the jury's implied finding that the negligence of the city was the proximate cause of the accident. On this point the city's argument is that there was no evidence upon which the jury could legitimately find that the slippery surface of the road *in fact* caused or contributed to the lateral movement of the trailer by which it was propelled over the divider

and into the on-coming traffic. However, the jury could properly have drawn the inference that the condition of the roadbed caused or contributed to the accident from the following evidence : (1) The surface of the street was wet and covered with sand and debris; (2) under such conditions, the coefficient of friction would be about the same as that of ice; (3) the rear wheels of a large semitrailer truck would have a greater tendency to slide on wet pavement than on dry; (4) the rear wheels of a large semitrailer truck have a greater tendency to slide when the truck is executing a turn to the right or left, the sharper the turn the greater the tendency to slide; (5) the accident occurred at a point on the highway where the road curves to the right; (6) the truck was executing an even sharper turn to the right since the operator was attempting to move from the left lane to the right lane; and (7) the truck went out of control as the driver attempted to turn to the right to move over to the right lane. While different inferences might have been drawn from the evidence, this court cannot say that those drawn by the jury were not reasonable. Thus the implied finding that the dangerous condition created by the city was at least a concurring or contributing cause of the accident has substantial support. Furthermore, the implied finding that the city's negligence was a proximate cause of the accident was proper. The learned trial judge discussed this question in his memorandum opinion as follows : ''On the question of proximate cause, no error of instructions is suggested and the jury was properly instructed as to liability for concurring negligence. 'Whether the dangerous condition was a proximate cause of the damage is a question of fact' (*Osborn* v. *City of Whittier,* 103 Cal.App.2d 609, 616 [230 P.2d 132]) and the jury, under appropriate instructions and within the evidence before it, resolved that fact adversely to defendant city. 'The question is not whether defendant did foresee, or by the exercise of ordinary care should have foreseen, the identical consequence that happened, in order that its act or omission be a proximate cause of the injury or damage. The question is whether it was reasonably foreseeable that injury or damage would likely occur. Defendant's duty is measured by the standard of foreseeability of injury or damage to the eyes of a reasonably prudent person having regard for the accompanying circumstances.' (*Osborn* v. *City of Whittier, supra,* page 616.) This court cannot say, in passing on defendant city's motion for a new trial, that there. was no credible evidence to support the implied finding of the jury that having

regard to the surrounding circumstances, it would not have been reasonably foreseeable to a reasonably prudent person that injury would likely result from the acts and omissions of defendant city.'' This is a correct analysis and a proper application of the principles of proximate cause on this record.

The attempted appeal from the verdict is dismissed. The judgment and the order denying the city's motion for judgment notwithstanding the verdict are affirmed.

Ashburn, J., and Kincaid, J. pro tem.,* concurred.

A petition for a rehearing was denied June 3, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 6, 1960.

_____

*Assigned by Chairman of Judicial Council.