[Civ. No. 20753.   Second Dist., Div. One.   Apr. 25, 1955.]

MARY ANNE ALVAREZ et al., Respondents, v. COUNTY OF LOS ANGELES, Appellant.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Deputy County Counsel, for Appellant.

Goodstein, Moffitt & Weisman and Gerald L. Rosen for Respondents.

DORAN, J.—After a trial by jury, plaintiffs recovered judgment for personal injuries alleged to have resulted from the maintenance of an unpaved gravel road known as 80th Street East, which road served as a means of access to a small number of ranches located to the northeast of the community of Lancaster in Antelope Valley.

The liability of the county was predicated on the Public Liability Act, making it incumbent to prove, (1) that the highway was in a dangerous or defective condition; (2) that the damages were proximately caused by such condition; (3) that the defendant had notice or knowledge of the dangerous condition; and (4) that having such knowledge, the defendant failed within a reasonable time, to remedy the condition, or to take such action as might be reasonably necessary to protect the public against such condition.

The section-line road in question had existed for many years, and in January, 1952, Mr. and Mrs. Alvarez purchased a ranch located at the intersection of 80th Street East and Avenue C. Mrs. Alvarez used 80th Street East in driving to and from the ranch on weekends, retaining employment as Assistant Superintendent of Nurses at St. John's Hospital in Santa Monica. There was evidence that the road was rough, "washboardy," and covered with loose gravel; that Mrs. Alvarez knew the road was rough, and that Mr. Alvarez had "cautioned me. He said, 'During the winter months, if you should come up, remember it is a rough road and slick.'"

On Friday, May 16, 1952, the road was dragged by the County Road Department as a part of its regular maintenance. On Saturday morning, May 17, 1952, Mrs. Alvarez, driving a 1951 Ford Sedan, proceeded towards the ranch on 80th Street East. Shortly before the accident plaintiff noticed gravel on the road, "and a considerable amount of rock with it or heavy gravel," and slowed down. The road then "appeared smooth again, and I continued on my way," at a speed of "about 25 or 30 miles an hour." Mrs. Alvarez then "saw another rough spot, . . . on the right-hand side

of the road, and the thought in my mind was to avoid it and get into the middle of the road and my car just went out of control. . . . my car just seemed to lurch. . . . I remember a terrible crash. I remember also trying to keep my hands on the wheel and trying to right my car, but nothing I could do seemed to help it any." There was evidence that plaintiff's car skidded 146 feet down the road and off the road into a power pole 15 feet from the roadway.

A Mr. Rhodes, who lived in the vicinity and appeared on the scene immediately after the accident, testified that at this point there was a dip in the road some ten or twelve inches deep, with "four, or five inches, or six inches" of loose gravel in the bottom of it. This witness often drove over this road, and "the same thing nearly happened to me once myself, driving a pickup truck. I nearly lost control of it in the loose gravel after it had been dragged, the same as it had at this time."

There was evidence given by a Mr. Blake, a civil engineer, in response to a hppothetical question, that the methods employed in this case, "would not be quite in the usual safe procedure for maintaining such gravel roads." There was also evidence to the effect that loose gravel would apparently conglomerate in the dip after dragging, and that this loose gravel would disguise the magnitude of the dip. The skid marks or zig zag marks, indicating that the car was out of control, appeared to begin at the dip.

It is appellant's contention that the verdict in favor of plaintiffs is not sustained by the evidence, and that the trial court improperly denied the defendant's motions for nonsuit, directed verdict and for judgment notwithstanding the verdict. Appellant's brief concedes that on an appeal such as this, "the evidence most strongly favoring the respondent," must be considered. Appellant also affirms that "There is no dispute that the road was rough and was covered with loose gravel," but argues that "The road had been maintained in a manner which was customary for the type of road involved," and that "The County is not an insurer of the safety of users of public highways."

A survey of the record indicates that there was the usual conflict of evidence in respect to the existence, size, condition, etc., of the road surface and the dip alleged to have caused plaintiff's accident. The defendant's theory, that Mrs. Alvarez' excessive speed rather than a defective roadway was the proximate cause of the damage, was duly presented to

the jury for its decision. These questions of fact, present in almost every case of this type, were resolved in favor of the plaintiffs. It cannot be said that there is not substantial evidence in support of this finding; such being the case, there can be no appellate interference. And certainly, since the verdict of liability finds adequate support in the evidence, it cannot be said that the trial court erred in denying motions for nonsuit, directed verdict, and judgment notwithstanding the verdict.

It may be noted that the verdict and judgment herein do not subject a county to a "crushing burden," nor make the defendant an insurer of safety. The jury could well believe that with such a dip in the road, the dragging of loose gravel thereon might effectually mask and hide the depression resulting in a dangerous situation which was the real cause of the injury. Cases cited by appellant are not factually similar, and supply no ground for reversal.

Since the county had worked on the road on the day preceding plaintiff's accident, the jury might reasonably conclude that there was adequate notice of the condition and danger, and that the work done aggravated such danger. Nor does the evidence establish as a matter of law, that Mrs. Alvarez was guilty of contributory negligence; this also, was a question of fact for the jury to determine.

■ The record fails to support appellant's contention that the county was precluded from introducing competent evidence in support of its defense. Certain evidence as to tracks observed two days after the accident was excluded as too remote; likewise tests made almost two years thereafter, were excluded. As respondents note, a trial court "has a wide discretion in this regard," and it does not appear that any abuse of that discretion occurred. Defendant's theory of the accident seems to have been fully presented to the jury.

■ Nor can it be said that any prejudicial error occurred in reference to the giving or refusing of instructions to the jury. Such matters as the Public Liability Law, actual and constructive notice, etc., were adequately covered, and reading the instructions as a whole it is impossible to believe that the jury could have gained an erroneous concept of duty. Defendant's requested instructions, which were refused, were either covered by other instructions given, or unnecessary under the issues of the case.

Appellant contends that the jury was "coerced" by the trial court into bringing in the verdict of liability. As con-

ceded in appellant's brief, "a trial court must be given wide latitude in determining the length of time that jurors may be required to deliberate," and there appears to have been no abuse of this discretionary latitude. The jury deliberated some 15 hours, certain instructions were reread; after being sent home over the weekend, a verdict of 10 to 2 was rendered in favor of plaintiffs. The present case is nowise similar to *People* v. *Crowley*, 101 Cal.App.2d 71 [224 P.2d 748], cited by appellant, where the trial judge clearly indicated a belief in the defendant's guilt and gave the jury half an hour to bring in a verdict. ▇ As appellant says, "While urging a jury to arrive at a verdict is ordinarily permissible, it should be done only where there is no danger of the court's urging the jury to arrive at a particular verdict." Nothing of that kind was present in the instant case, and no prejudice to appellant's rights is apparent either in respect to this matter or any other.

The judgment, and order denying a motion for judgment notwithstanding the verdict, are affirmed.

White, P. J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1955.