[Civ. No. 23194.   Second Dist., Div. One.   June 2, 1959.]

RANDALL G. REEL, Respondent, v. CITY OF SOUTH
GATE, Appellant.

Schell, Delamer & Loring for Appellant.

Harney, Drummond & Dorsey for Respondent.

WHITE, P. J.—Defendant city of South Gate, a municipal corporation, appeals from the judgment after verdict awarding plaintiff $52,671.42 as damages for injuries suffered by him when his automobile ran into unlighted barricades in the street, swerved off the pavement and collided with a cement wall.

Appellant urges reversal on the basis of errors in the admission of evidence, errors in the instructions to the jury,

and its claim that the evidence is insufficient to sustain the judgment.

The action was pleaded and tried under the provisions of the Public Liability Act (Gov. Code, § 53050 et seq.) which provides that "A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition: (a) Had knowledge or notice of the defective or dangerous condition. (b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition."

The accident occurred at about 5:30 on the evening of Saturday, January 22, 1955, near the fork of Garfield Avenue and Garfield Place and just north of the southern limits of the city of South Gate. The condition of the highway at that point had been changed by moving and repainting the traffic island on Friday, January 21st, but because the plaintiff had never before traveled that highway and knew nothing of its prior condition, it can serve no useful purpose to describe its prior condition or the changes made. The changes were completed about 3:30 p.m. on Friday, and, from that time until the happening of the plaintiff's accident, the highway conditions remained the same, except for the change from daylight to dark and the change from Friday mid-afternoon light traffic to Saturday evening traffic, which is probably the heaviest of the week.

For the sake of clarity, we shall first describe the locale of respondent's collision and injury, as it appears from the photographs, maps, and testimony in the record. Although both parties agreed that the jury might view the site of the accident, the court did not permit it because of the changed conditions. As required on appeal, only the portions of the evidence tending to support the judgment are included in the following description.

For some miles Garfield runs almost due north and south to a point about 230 feet south of the southerly point of the new traffic island. Up to that point, its pavement was 48 feet wide, bounded on the east by a curb and on the west by an asphalt shoulder about 10 feet wide. The northbound traffic was separated from the southbound traffic by a double white line on the pavement and the portion of the pavement for northbound traffic was divided by a single white line into

two lanes. There the line dividing the two lanes for northbound traffic stopped, and the double centerline was absent for about 40 feet and then continued on the same line and in the same direction as before.

. Near the end of the white line which had divided the two lines of northbound traffic, the easterly edge of the pavement swung gradually to the east slowly widening the pavement east of the double centerline. There was no sign of any kind to slow down the traffic or to warn the drivers of any hazard or changed conditions.

About 230 feet north of the end of the line which had divided the two lanes for northbound traffic and the same distance east of the centerlines, the westerly line of the traffic island began and continued in the same direction. From that point another painted line left at a 15 to 20 degree angle to the northeast and formed the traffic island, about 240 feet long, tapering from points at the ends to about 35 feet wide in the middle. At the south end of the island where the highway forked, the pavement was about 80 feet wide and at the north end about 150 feet wide.

The southbound traffic on Garfield Place continued straight south on the portion of the pavement west of the centerline, and the southbound traffic on Garfield Avenue was required by a sign to "Keep to Right" of the island (northwest of it) and to "Stop" before entering Garfield Place.

No such signs warned the northbound traffic. The painted traffic island completely covered the easterly lane for northbound traffic, leaving only one lane west of the island. The city's painters, upon orders from the city engineer, when they finished painting the island about 3:30 on Friday, left 20 unlighted barricades similar to sawhorses in and near the painted island, including the three which were broken by plaintiff's automobile from about 30 to 10 feet south of the island. The paint was dry before dark on Friday, but pursuant to the orders of the city engineer the barricades remained in the island and in the traveled portion of the highway without lights or warning of any kind until after respondent's accident, more than 24 hours after the paint was dry. The orders of the city engineer to the painters were to leave them there "until the public learned to go around that island."

At dusk on the day of the accident, respondent was for the first time traveling on Garfield, going north at a reasonable and moderate speed in the most easterly of the two lanes of northbound traffic. At a point about 80 feet south of the

southerly point of the painted traffic island, respondent's brakes were engaged. At points about 30 to 10 feet south of the point of the island his car collided with and broke three barricades, went out of control, swung left, right, left, right and left again, avoided hitting any automobiles, crossed the entire highway and collided with a concrete wall west of the highway. He was seriously injured and unconscious, and at the trial testified that he had no recollection of the accident, of the time shortly before it, or of anything after the accident until several days later when he became aware that a spinal tap was being made upon him at the General Hospital.

Appellant urges that the evidence is insufficient to support the judgment in the following particulars:

"(1) That there is no evidence that the City or its employees caused respondent 'to leave the highway and drive through the island';

"(2) That there is no evidence that barricades were placed by the City in the traveled portion of the highway; and

"(3) That there is no evidence that the City had notice that barricades had been placed in the traveled portion of the highway."

The highway itself, as well as the island, being public property of the city of South Gate, it is unnecessary to consider appellant's first specification of insufficiency of the evidence.

It is generally known that it is the custom of street painters to place barricades outside of the painted lines so as to prevent motorists from driving over wet paint. That knowledge together with the testimony of the painters quoting their orders from the city engineer is sufficient to support an implied finding of the jury that the unlighted barricades were placed by the painters "in the traveled portion of the highway," where they were seen by other motorists at the time of respondent's accident, 10 to 30 feet south of the south point of the island.

Appellant insists that, as a matter of law, the existence of the island even without lights indicating its existence was not a dangerous or defective condition, and urges that "a case which on its facts is as close to the present case as can be conceived is *Waldorf* v. *City of Alhambra* (1935), 6 Cal.App. 2d 522 [45 P.2d 207]"; and that "a case which is closely in point on the same subject is *Campbell* v. *City of Santa Monica* (1942). 51 Cal.App.2d 626, 629, et seq. [125 P.2d 561]."

The facts of each of the above cited cases are distinguishable

from the facts of the instant action. The *Waldorf* case, *supra*, involved a "jog" in a city street at an intersection outlined by curbs clearly visible and constituting no danger to motorists driving at the then legal speed. In the *Campbell* case, *supra*, plaintiff was injured while walking on the promenade for pedestrians only. She was hit by an automobile driven on the promenade in violation of a city ordinance and signs directing the automobiles into the streets intended for them.

As said by Mr. Justice Curtis, speaking for the Supreme Court, in *George v. City of Los Angeles*, 11 Cal.2d 303, 308 [79 P.2d 723] : "The rule adopted by the courts of this state is that while a municipality is not an insurer of the safety of travelers on its streets, the duty is imposed upon it by the Public Liability Act of 1923 to exercise ordinary care to maintain its streets in a reasonably safe condition for their use in a proper manner.

". . . It is well settled in this state that when dealing with cases falling under the provisions of the Public Liability Act of 1923, each of such cases must depend upon its own state of facts and that no hard-and-fast rule can be applied in the great majority of cases."

In the George decision, *supra*, an automobile left the highway and collided with a utility pole near the edge of the road just beyond a dangerous dip in the pavement and the place where one of the traffic lanes "blanked out" without warning signs or lights. In the George case, *supra*, the Waldorf decision is distinguished and judgment for defendant after its demurrers were sustained without leave to amend was reversed.

The facts of the three other decisions cited by appellant in this connection are also quite different from those of the instant action.

In *Sinclair v. City of Pasadena*, 21 Cal.App.2d 720 [70 P.2d 241], judgment for defendant notwithstanding the verdict was affirmed. Plaintiff's automobile collided with a steamroller parked in a dark street, where a row of lighted lanterns had been so placed as to mislead motorists. The judgment was affirmed because actual notice of the condition was had only by the foreman in charge of the repair work, the operator of the steamroller and the employee who serviced the lanterns.

*Loewen v. City of Burbank*, 124 Cal.App.2d 551 [269 P.2d 121], affirmed a judgment for defendant after nonsuit. Plaintiff was a 10-year-old boy who climbed one of three eucalyptus trees which had been topped, trimmed and pulled over into

the street. The crews of workmen did not know plaintiff was there. He was injured when he swung out on one of the limbs near the top of the tree, causing it to roll over. It was there held that the city was not liable because no one expects the public streets to be used as a playground.

*Cheyney* v. *City of Los Angeles,* 119 Cal.App.2d 75 [258 P.2d 1099], is a case where judgment for defendant after nonsuit was affirmed. In the Cheyney case, plaintiff had parked her automobile in a public parking lot late at night, walked down a dark stairway toward the beach, and at the bottom where it was so dark she could see nothing she stepped off into the air, falling some 30 inches to the sand. It was there held that as a matter of law plaintiff was contributorily negligent in proceeding into a strange place in total darkness.

More nearly analogous with the facts of the instant action are those considered in *Wood* v. *County of Santa Cruz,* 133 Cal. App.2d 713, 718 [284 P.2d 923], wherein a judgment for defendant after a directed verdict was reversed for the reason that it is a question of fact whether broken branches piled on the pavement by the county's tree pruners about three days before constituted a dangerous condition of public property for which defendant was responsible under the Public Liability Act; *Alvarez* v. *County of Los Angeles,* 132 Cal.App.2d 525 [282 P.2d 531], wherein judgment for plaintiff was affirmed for damages caused by her automobile going out of control when it hit loose gravel dragged by county employees into a dip so as to conceal the dip from drivers; and *Barsoom* v. *City of Reedley,* 38 Cal.App.2d 413 [101 P.2d 743], affirming judgment for plaintiff for injuries caused when she fell at night on loose pipe piled along a city street.

█ In the instant action, the city's painters, under express orders of the city engineer, having placed and left the barricades in the painted traffic island and near it in the traveled portion of the highway, the city was not entitled to express notice that after sunset it would be responsible for the dangerous condition of a public highway so created. While every driver is required to keep a diligent lookout ahead of him, he is not required to anticipate traps such as unlighted and unwarned of barricades directly in front of him on a well-traveled highway. The city is responsible for the damages caused by such traps created under the orders of its city engineer.

After a careful examination of the transcript and exhibits in

the instant action, this court is convinced, as was the jury and the trial court, that the evidence supports the verdict.

The jury in the instant action was instructed as to the duties and responsibilities under the Public Liability Act, *supra*; as to the essential elements of proof necessary to justify any judgment for plaintiff; as to negligence, ordinary care, contributory negligence, proximate cause, burden of proof, the duties of the respondent-driver, the rebuttable presumption of due care on his part if the jury should find that he has no memory of the accident or the events immediately preceding it, the degree of care required of a person in imminent peril, lawful speeds, and damages.

■ Appellant urges that the giving of each instruction on the law of negligence, contributory negligence and proximate cause in this action under the Public Liability Act constitutes reversible error. That is not the law. (*George* v. *City of Los Angeles, supra,* 11 Cal.2d 303, 308; *Maddern* v. *City & County of San Francisco,* 74 Cal.App.2d 742, 755 [169 P.2d 425].) In the instant action, even if the giving of instructions on negligence were error, the fact that appellant requested many of those instructions given would prevent a reversal on appeal for that reason.

■ Appellant also urges that the court committed prejudicial error in giving the following instruction to the jury:

"If, and only in the event, you should find that there was an accidental occurrence as claimed by the plaintiff, namely: That defendant placed or caused to be placed in an area of the street in question open to the use of the public for purposes of vehicular traffic, certain barricades which were unlighted and of which defendant gave no warning, and if you should find that from that accidental event, as a proximate result thereof, plaintiff has suffered injury, you are instructed as follows: an inference arises that the proximate cause of the occurrence in question was some failure of duty on the part of the defendant. That inference itself is a form of evidence, and if none other exists tending to overthrow it, or if the inference (either alone or with any other evidence supporting it) preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did, in fact, perform its duty under the law I have given you or that the accident occurred without being proximately caused by any failure of duty on its part."

After discussing numerous decisions from the courts of

other states, appellant, in its brief, states: "There is no exact precedent established in California. The District Court of Appeal in *Bodholdt* v. *Garrett*, 122 Cal.App. 566 [10 P.2d 533], stated that to hold the doctrine of '*res ipsa loquitur*' applicable under the Public Liability Act of 1923 'would result in nullifying the intent of the legislature . . . that there shall be at least constructive notice of a defect or danger to those authorized to remedy such condition.' In *Bodholdt* v. *Garrett*, it is indicated that the doctrine may apply under the 1923 statute, after notice has been shown to the persons authorized to remedy a defect."

The dangerous public property considered in the Bodholdt decision, *supra*, was a defective spring in a truck belonging to the city of Oakland, of which no officer or employee of the city was aware until the time of the accident. The language of that decision quoted above from appellant's brief appears at page 570. At page 569 of the Bodholdt decision, the court said: "Under the 1923 statutes, notice to or knowledge by the proper authorities of the defect or danger is required. If the authorities should have known of the danger, the doctrine of *res ipsa loquitur* applies. (*Damgaard* v. *Oakland High School Dist.*, 212 Cal. 316 [298 P. 983].) But in a case where there is an absence of evidence from which an inference could be drawn that the persons authorized to remedy the defect should have known of such condition, the doctrine of *res ipsa loquitur* does not apply. In *Damgaard* v. *Oakland High School Dist.*, *supra*, a teacher undertaking to instruct pupils in experimentation of explosive gases should have known of the attending danger and should have taken the necessary precautions to avert an explosion. Actual notice is not necessary under such facts as appeared in the Damgaard case."

In its opening brief, appellant states that "There is only one situation under the 1923 statute where '*res ipsa loquitur*' logically may apply; that is in the case of 'inherently dangerous acts,' where the original plan of construction or operation itself gives notice that injury is reasonably probable or inherent in the conditions created according to such plan, or is inherently involved in its execution."

Accepting appellant's statement, we are satisfied that in the instant action wherein evidence was produced by respondent and not refuted by appellant that the city engineer ordered the street painters to leave unlighted and unwarned of barricades in the traveled portion of the highway an inherently dangerous and defective condition of the highway was created

according to the city's plan of operation. Conceding that when the barricades were left in the traveled portion of the highway in mid-afternoon on Friday they could be seen and created no traffic hazard, the city engineer must be presumed to have known that such barricades would be difficult (or perhaps impossible) for drivers to see and avoid after dark, and particularly in the Saturday evening traffic congestion. Also, the city engineer must have known that barricades so placed as to prevent drivers from going over the painted lines, while effective in daylight, after dark would merely obscure the white painted lines.

While a driver is required to pay attention to the road ahead of him and to remain alert to unexpected changes, we are satisfied that he is not required to anticipate that he may be approaching a group of unlighted and unwarned of barricades under conditions as shown by the evidence in the instant action.

Considering the instructions as a whole, as an appellate court is required to do, we are satisfied that the jury in the instant action was fairly and adequately instructed and that the instructions were not prejudicial to appellant.

With regard to appellant's claim that the judgment must be reversed because of errors in the admission of evidence, we have carefully considered the entire transcript of some 1,100 pages of testimony and have determined that, even if it was error to admit certain testimony, appellant was not prejudiced by it. For that reason, it need not be determined whether technically it was error to permit an expert investigator and analyzer of accidents to testify as to the probable visibility of unlighted barricades under hypothetical conditions, particularly where, as in the instant action, eyewitnesses testified as to what they could see at the time and place of the accident. The other evidence relied upon by appellant as constituting prejudicial error was plaintiff's statement that he had not been "cited" by any of appellant city's police officers. Since according to the witnesses who saw plaintiff's automobile before it collided with the barricades and went out of control, his car had been driven in a careful and legal manner, the fact that he had not been "cited" could not have been prejudicial.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied June 29, 1959, and appellant's petition for a hearing by the Supreme Court was denied July 29, 1959.