Filed 3/13/24  Walia v. CPX Carrier CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| PREET WALIA, et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>CPX CARRIER, INC., et al.,<br><br>    Defendants and Respondents. | A165798<br><br><br>(Contra Costa County<br>Super. Ct. No. MSC19-01707)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed herein on February 20, 2024, be modified as follows:

1. On page 1, modify the first sentence by deleting the phrase "stopped traffic caused by" and adding, after the words "one side of a highway," the phrase "and resultant queues of stopped traffic," so that the sentence reads:

> "This appeal concerns whether an overturned tractor trailer blocking all lanes on one side of a highway and resultant queues of stopped traffic can constitute a dangerous condition of public property for purposes of Government Code section 835."

1

2. On page 8, in the first full paragraph (which begins, "Here, plaintiffs do not claim . . ."), modify the second sentence by deleting the colon and the words "queues of stopped traffic" after the words "condition of public property," so that the sentence reads:

"Rather, plaintiffs claim the blockage of the freeway caused by the overturned big rig created a new dangerous condition of public property.[2]"

There is no change in the judgment.

Appellants' petition for rehearing is denied.

Dated:

_____
Humes, P. J.

A165798

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PREET WALIA, et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>v.<br><br>CPX CARRIER, INC., et al.,<br><br>　　　Defendants and Respondents. | A165798<br><br>(Contra Costa County<br>Super. Ct. No. MSC19-01707) |

This appeal concerns whether stopped traffic caused by an overturned tractor trailer blocking all lanes on one side of a highway can constitute a dangerous condition of public property for purposes of Government Code section 835.  That statute defines when a public entity can be liable for injuries suffered on public property.  (Gov. Code[1], § 835.)  Here, the family of a man killed in an accident at the site of such a traffic blockage sued the California Department of Transportation (Caltrans) under section 835.  The trial court granted summary judgment in favor of Caltrans.  It held the blockage did not constitute a dangerous condition of public property as a matter of law.  We will affirm on that basis and also because Caltrans is immune from liability for its claimed failure to provide traffic or warning signals or devices.  (§ 830.8.)

---

[1] All undesignated statutory citations are to the Government Code.

# I. BACKGROUND

At 1:20 a.m. on May 25, 2018, a tractor trailer overturned on eastbound Interstate 80 (I-80 east). It caught on fire and spilled fuel and wreckage across the highway, blocking all four eastbound lanes.

The accident occurred west of the Carquinez bridge and Pomona exit and east of the Cummings Skyway exit. The California Highway Patrol (CHP) responded, and the accident site was marked with cones and flares and flashing lights from emergency responders. A CHP officer in charge of the accident site concluded it would take hours to clear. Just before 2:00 a.m., he directed Caltrans to close I-80 east at Cummings Skyway and divert all eastbound traffic off the highway at that exit. A Caltrans maintenance supervisor received the directive minutes later and promptly went to the accident site but did not effect a closure. Plaintiffs assert Caltrans took no steps in the next two hours to close I-80 east or divert traffic. Caltrans concedes there is a factual dispute whether it did so. For purposes of this appeal, we will assume it did not. Caltrans undisputedly did not post other warnings to approaching drivers of the freeway blockage at the accident site or of traffic queues that subsequently developed.

After the initial accident, lines of stopped vehicles formed behind the blockage. Just before 4:00 a.m.—two hours after the CHP's closure directive—Jaipal Walia neared the accident site while driving east on I-80. He failed to stop his car in time and fatally collided with a semi-truck at the end of a line of stopped vehicles. His wife and children sued Caltrans. They asserted a single cause of action for dangerous condition of public property under section 835. Plaintiffs' complaint alleged Caltrans was negligent and careless in the design, construction, maintenance, inspection, repair, and

2

control of I-80 at this location, and the adjacent area, such that the roadway presented a dangerous, defective, and hazardous condition.

Caltrans moved for summary judgment. It contended plaintiffs could not prove the existence of a dangerous condition of public property, as an overturned big rig resulting in stopped traffic cannot amount to such a condition. As for the lines of stopped vehicles on the roadway, Caltrans contended they did not satisfy the definition of a dangerous condition, which must pose a substantial risk to those using the property with due care. (§ 830, subd. (a).) Caltrans contended a reasonable driver using due care would have seen the emergency vehicles and stopped traffic and been able to stop in time.

Plaintiffs opposed the motion. Among other evidence, they submitted a declaration by a traffic engineer. He opined that a traffic stoppage is dangerous when encountered without warning at 4:00 a.m. on a highway with otherwise free-flowing traffic. He also described how I-80 east slopes up to a crest after the Cummings Skyway exit, at a grade that kept drivers from seeing the accident site until they reached the top, leaving little time to react.

Plaintiffs also submitted deposition testimony by Robert Williams, a driver who reached the site just before Walia. He saw the stoppage when he crested the slope an estimated quarter mile before the site and came to an "aggressive stop," braking suddenly but not to a degree that threatened a loss of control. He felt afraid to stay in his lane because, if a subsequent driver was "not paying attention as they came over the hill," they might fail to stop in time and hit him. He thus pulled onto the shoulder beside a stopped tractor trailer, just behind the truck's cab. About a minute later, as Williams watched "very, very closely" in his rearview mirror, Walia's car came over the

3

hill, "didn't slow down until [Williams] almost lost sight of him" in his mirror, and then "started braking very hard," skidded, and hit the truck.

After hearing argument, the trial court issued an order granting summary judgment. It based its ruling solely on a conclusion that plaintiffs failed to establish that a dangerous physical condition of public property was a causal factor in Walia's collision.

## II. DISCUSSION

Section 835 is part of the Government Claims Act (§§ 810–840.6). That act—originally known as the Tort Claims Act—defines the liabilities and immunities of public entities. (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1047 & fn. 6.) A public entity "is not liable for injuries except as provided by statute." (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.) The act's purpose is " 'to confine potential governmental liability to rigidly delineated circumstances.' " (*Ibid.*) Section 835 "sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property." (*Ibid.*)

To establish liability under section 835, a plaintiff must prove that, at the time of injury, a dangerous condition existed on public property, that it created a reasonably foreseeable risk of the kind of injury suffered, and that it proximately caused the injury. (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 716.) A plaintiff must also prove that a public employee's negligence or misconduct created the condition, or that the public entity had actual or constructive notice of the condition a sufficient time before the injury to protect against it. (*Ibid.*) Section 830 defines a dangerous condition of property as one creating a substantial risk of injury when the property is used with due care. Section 830 extends responsibility for a dangerous condition of public property to include risks from property adjacent to public

4

property when the conditions expose those using the public property to a substantial risk of injury. (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148 (*Bonanno*).) "[A] dangerous condition exists when public property is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself. [Citations.] . . . [P]ublic property has also been considered to be in a dangerous condition 'because of the design or location of the improvement, the interrelationship of its structural or natural features, or the presence of latent hazards associated with its normal use.'" (*Bonanno*, at pp. 148–149, italics omitted.) The fact that an accident occurs is not in and of itself evidence that public property was in a dangerous condition at the time of injury. (§ 830.5, subd. (a).)

While the existence of a dangerous condition is usually a question of fact, it may be resolved as a matter of law "if reasonable minds can come to only one conclusion." (*Zelig v. County of Los Angeles* (2001) 27 Cal.4th 1112, 1133 (*Zelig*).) The Legislature has expressly authorized courts in appropriate cases to determine no such condition existed: "A condition is not a dangerous condition . . . if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property . . . was used with due care" in a reasonably foreseeable manner. (§ 830.2.)

Even if a dangerous condition is demonstrated, a public entity may still prevail through a variety of statutory immunities "which [it] may assert as affirmative defense[s]." (*Gonzales v. City of Atwater* (2016) 6 Cal.App.5th 929, 945.) Section 830.8 creates one such immunity. It provides that a public

5

entity is not liable for injury caused "by the failure to provide traffic or warning signals, signs, markings or devices" unless necessary to warn of a concealed defect. (*Kessler v. State of California* (1988) 206 Cal.App.3d 317, 321–322.)

A trial court may grant summary judgment if "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subd. (p)(2).) We independently review an order granting summary judgment, considering all evidence set forth in the moving and opposing papers " ' " 'except that to which objections were made and sustained.' " ' " (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.) " 'We liberally construe the evidence in support of the party opposing summary judgment,' " resolving doubts in their favor. (*Ibid.*)

### A. The Site Did Not Constitute a Dangerous Condition of Property.

Caltrans contends plaintiffs fail to establish a physical defect in I-80 that resulted in the existence of a dangerous condition. Its moving papers contend that neither the complaint nor plaintiffs' responses to interrogatories asking them to identify the dangerous condition stated facts amounting to a physical defect in public property that causally contributed to Walia's injuries. We agree.

Plaintiffs identified the dangerous condition as follows: Caltrans knew secondary collisions like Walia's accident are a foreseeable consequence of primary collisions like the initial accident. Two hours before Walia's accident, the CHP informed Caltrans of the initial accident and of the need to divert traffic off I-80 east at the exit before the accident site. Caltrans did not

6

divert traffic or warn drivers of the blockage. Lines of stopped cars formed. A reasonable person driving on I-80 at 4:00 a.m. would not anticipate encountering, without warning, a total stoppage of all lanes. The stoppage was on the far side of a slope that made it difficult for drivers to see the emergency vehicles, brake lights, and other signs of a stoppage until they crested the slope, a short distance from the stopped vehicles.

The dispositive question is thus whether traffic queues resulting from an initial accident caused solely by negligent third-party driving can amount to a dangerous condition of public property for purposes of section 835.

The trial court analyzed liability cases in which third party misconduct was the cause of injury, but in which a public entity was also found liable. (*Bonanno, supra*, 30 Cal.4th at pp. 152–155; *Zelig, supra*, 27 Cal.4th at pp. 1134–1137.) The court cited *Bonanno* and *Zelig* for the rule that, while a public entity can be liable for injuries caused by third party misconduct on public property, a "physical deficiency in the property itself" must have increased the danger of such misconduct. That rule barred plaintiffs' claim, the court held, because no physical feature of I-80 east causally contributed to the initial accident or to Walia's accident.

*Bonanno* and *Zelig* do not directly address plaintiffs' theory of liability. The cases address public entity liability when a third party's negligent or criminal conduct on public property was the *immediate* cause of an injury, but a *preexisting* condition of the property causally combined with the misconduct to produce the harm. (*Bonanno, supra*, 30 Cal.4th at p. 152; *Zelig, supra*, 27 Cal.4th at pp. 1131–1137.) Courts have applied the rule when, for example, the lack of a left-turn lane increased the risk that people waiting to turn would be rear-ended by negligent drivers (*Baldwin v. State of California* (1972) 6 Cal.3d 424, 426–428 & fn. 3, superseded by statute on other ground

7

as stated in *Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 663–664); the location of a bus stop forced riders to use a dangerous crosswalk, creating a risk they would be hit by negligent drivers (*Bonanno, supra,* 30 Cal.4th at pp. 152–154); or a tree on a median strip increased the severity of the injuries suffered by a family forced onto the median when a negligent driver sideswiped their car (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1106–1107). The theory of liability in such cases is that, while third party misconduct injured a person, or immediately precipitated the accident that did so, an existing physical condition of the property causally contributed to the injury by increasing the risk or harmfulness of such misconduct. (*Bonanno, supra,* 30 Cal.4th at pp. 152–154 and cases cited *ante.*)

Here, plaintiffs do not claim the negligent driving of the tractor trailer directly harmed Walia or precipitated his accident, while a preexisting defect in I-80 east contributed to the harm. Rather, plaintiffs claim the blockage of the freeway caused by the overturned big rig created a *new* dangerous condition of public property: queues of stopped traffic.[2] Plaintiffs claim a triable issue of fact exists because Caltrans had notice of the new dangerous condition and time to protect against it by notifying motorists and/or closing the freeway to divert traffic but did not do so.

Plaintiffs present an expert's opinion that, while reasonable drivers expect traffic stoppages at rush hour, they do not expect to encounter one at 4:00 a.m. They also cite evidence of Caltrans's general knowledge that secondary collisions at accident sites pose a risk. Finally, they cite evidence that the accident site was on the far side of a slope that limited the site's

---

[2] Plaintiffs' liability claims as to Caltrans are limited to a single cause of action for dangerous condition of public property. Plaintiffs do not otherwise contend that Caltrans had an independent mandatory duty to close the freeway in response to the accident or to post traffic signage.

visibility to approaching drivers, and that Williams, a preceding driver, had to brake aggressively to stop.

As authority for this novel theory, plaintiffs rely on *Chavez v. County of Merced* (1964) 229 Cal.App.2d 387 (*Chavez*) and *Briggs v. State of California* (1971) 14 Cal.App.3d 489 (*Briggs*).  But neither *Chavez* nor *Briggs* supports plaintiffs' proposition.

In *Chavez*, a drunk driver veered off a highway and hit a utility pole, downing a live power line.  (*Chavez, supra*, 229 Cal.App.2d at pp. 390–391.) The power line sparked a grass fire adjacent to the highway.  (*Id.* at p. 391.) A witness drove to a nearby county fire station, told an engineer of the crash and electrical fire, and urged him to have the power cut off.  (*Ibid.*)  The engineer did not do so.  (*Ibid.*)  He sounded an alarm for volunteer firemen and went to the site.  (*Ibid.*)  He did not warn the volunteers of the live power line, and an electrical arc from the line killed one of them.  (*Id.* at p. 392.)

The Fifth District held the volunteer's family was entitled to a trial on their cause of action for a dangerous condition of public property.  (*Chavez, supra*, 229 Cal.App.2d at p. 394.)  The court rejected the county's claim that the wire was not on the roadway, concluding that the public is entitled to use "any part of the public street or highway."  (*Ibid.*.)  Finding the county was on notice of the downed electrical wire through the county engineer, the court found a triable issue of fact existed as to whether the county had a duty to warn of the danger presented by the wire.  (*Id.* at p. 397.)

*Briggs v. State of California, supra,* 14 Cal.App.3d 489 is similarly distinguishable.  *Briggs* did not involve negligent driving but a mudslide from adjacent land, which blocked one lane of a two-lane highway on a rainy night. (*Id.* at pp. 491–492.)  To avoid the slide, a driver pulled into the other lane, leading to a fatal collision.  (*Ibid.*)  On appeal, the state's main argument was

9

that it lacked notice of the slide. (*Id.* at p. 494.) The court found sufficient evidence of constructive notice of an obvious danger because state road crews had cleared similar slides from the same spot "for a period of 10 days to two weeks before the accident." (*Id.* at p. 495.)

Unlike this case, *Briggs* and *Chavez* both involved dangerous *physical* conditions of property adjacent to a public highway of which the public entity had actual or constructive notice. In contrast, the existence of heavy traffic upon a roadway does not constitute a physical defect of public property.[3] (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 440 [heavy volume of traffic and pedestrians without additional allegation of a physical condition of the road that creates a substantial risk is not a dangerous condition]; accord, *Mittenhuber v. City of Redondo Beach* (1983) 142 Cal.App.3d 1, 7 [heavy use of any given paved road alone does not invoke section 835].) It follows that if heavy traffic is not a physical defect of public property, neither is stopped traffic.

Plaintiffs also rely on three decisions holding that materials left on roads by negligent public employees created dangerous conditions. (*Reel v. City of South Gate* (1959) 171 Cal.App.2d 49, 55–56 [unlit barricades left in road by city engineer to divert drivers from newly painted traffic island were

---

[3] Since *Chavez*, cases have continued to address the scope of a duty of a public entity or official to remedy potential dangers caused by third parties on the side of the roadway when no physical defect of property was involved. (See, e.g., *Bonds v. California ex rel. Cal. Highway Patrol* (1982) 138 Cal.App.3d 314, 319 [CHP had no special duty to remove disabled car left on side of road]; *Posey v. State of California* (1986) 180 Cal.App.3d 836, 850 [CHP decision whether to remove disabled vehicle from highway is discretionary and no mandatory duty exists].)

a dangerous or defective condition of public property]; *Wood v. County of Santa Cruz* (1955) 133 Cal.App.2d 713, 716–717 [trimmed branches left lying on road by county employees created dangerous condition of public property]; *Barsoom v. City of Reedley* (1940) 38 Cal.App.2d 413, 419 [water pipe left lying in street by curb, pending installation, on which pedestrian tripped at night].)  The cases are likewise distinguishable.  Each involved the creation of a latent dangerous physical condition on a roadway by a public employee.

Plaintiffs' theory that a public entity can be liable for a dangerous condition of public property when third party negligence creates a *new* dangerous condition upon public property, despite no physical defect in property with a causal link to the alleged injury, finds no support in precedent.  Liability is imposed only when there is some defect in the property itself and a causal connection is established between the defect and the injury.  (*Zelig*, *supra*, 27 Cal.4th at p. 1135; *Summerfield v. City of Inglewood* (2023) 96 Cal.App.5th 983, 995 [city not liable for shooting at public park on theory of dangerous condition of property as no physical defect in property identified as having causal link to injury; absence of human supervision and protection is not a deficiency in the physical characteristics of public property].)

Plaintiffs do not directly contend that the slope in the highway itself is the dangerous condition of property with a causal connection to the Walia's accident.  Instead, plaintiffs claim the risk of the queued traffic was "heightened" by the presence of the slope.  No evidence is presented of an expert's opinion that the slope did not meet required highway design standards, was the result of a defective design or construction, or that Caltrans was aware of prior accidents at the same location associated with diminished visibility linked to the slope.  Plaintiffs' expert did not declare

11

that the design of the freeway was defective such that it created a dangerous condition by preventing a driver exercising due care from being unable to stop. Plaintiffs' expert opined that the area's topography "heightened the danger of a secondary collision," and that a driver cresting the hill had "precious little time to perceive and react to the need to brake."

However, plaintiffs' own evidence establishes that drivers exercising reasonable caution were able to stop. Williams was able to do so—as were the drivers of the vehicles already at the site. While plaintiffs note Williams's fear that a later driver might hit him, what he testified was that a driver "not paying attention as they came over the hill" might fail to stop. Asked if he felt the situation was "dangerous because the crest in the road . . . obscured the view of the stopped traffic," he answered, "I wouldn't say that. I would say I was more scared of somebody not paying attention as they came over the hill."

Plaintiffs have thus not identified facts that established a physical defect in public property amounting to a substantial risk of injury if the highway was used with due care. Even if stopped traffic could present a dangerous condition, plaintiffs have at most identified facts suggesting the site was dangerous for drivers "not paying attention"—that is, failing to exercise due care. It does not follow that the accident site or queued traffic constituted a dangerous condition of property for which Caltrans is liable. A public entity is required only "to provide roads that are safe for reasonably foreseeable careful use." (*Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1196.) If a risk of harm arises " 'only when foreseeable users fail to exercise due care, then such property is not "dangerous" within the meaning of section 830.' " (*Ibid*.) To hold Caltrans liable in the instant

case would impermissibly render it an insurer of the safety of travelers. (See *Mittenhuber v. City of Redondo Beach, supra*, 142 Cal.App.3d at p. 6.)

### B. Caltrans Is Immune from Liability Under Section 830.8.

Even if the big rig accident and resulting queued traffic could be considered a dangerous condition of public property, Caltrans would still be entitled to judgment as a matter of law on an alternative basis it raised below but the trial court did not reach. (See *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181 [summary judgment must be affirmed if correct on any ground raised below].) That basis is section 830.8, which immunizes a public entity from liability "for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code." (§ 830.8.)

Plaintiffs do not dispute that section 830.8 applies to their claims against Caltrans. But plaintiffs contend their claim falls within the "concealed trap" exception to section 830.8 immunity. The exception applies if a warning is required by a dangerous condition of a road that "would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (§ 830.8; see *Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 655, 660 [" 'concealed trap' exception"].)

But plaintiffs identify no facts amounting to a concealed trap. Specifically, as discussed above, they have not identified facts permitting a finding that the stoppage "would not be reasonably apparent" to a driver exercising due care. (§ 830.8.) They rely on the declaration of their traffic expert, but it creates at most a triable dispute as to whether such a driver would have "anticipated" a full traffic stoppage at the early hour of 4:00 a.m. A "concealed trap," however, must be both unanticipated and not reasonably apparent. (§ 830.8.) Plaintiffs' own evidence establishes the accident site

13

and queued traffic were apparent once a driver crested the slope preceding the accident site.

Additionally, to establish a concealed trap, a public entity must still have actual or constructive notice of the concealed trap to establish a duty to warn. (*Tansavatdi v. City of Rancho Palos Verdes, supra*, 14 Cal.5th at pp. 660–662.) Here, plaintiffs cited evidence showing only that Caltrans knew accident sites in general create a risk of secondary collisions, and Caltrans had notice of this site's existence and the CHP directive to close the highway at least two hours before Walia's accident. Plaintiffs cited no evidence Caltrans knew that a slope of the highway at the location where traffic queued restricted drivers' ability to see the stoppage.

Plaintiffs also fail to cite any decision finding a concealed trap on remotely similar facts. The lone case they cite, *Callahan v. City and County of San Francisco* (1967) 249 Cal.App.2d 696 (*Callahan I*), is unhelpful. In *Callahan I,* the plaintiff alleged that a road in a fog-prone area "was designed with the appearance of a freeway" but ended in a T intersection, beyond which lay a lake. (*Id.* at p. 698.) On a foggy night, a driver allegedly thought he was on a freeway, was unable to see that the road ended, and drove into the lake, injuring his passenger. (*Ibid.*) On appeal from a judgment entered after the city's demurrer, the primary issue was whether the passenger's operative complaint could state a cause of action even though her initial complaint had named only the driver and had alleged he was drag racing. (*Ibid.*.)

After analyzing the above issue at length, the court of appeal noted in a paragraph near the end of its opinion that the city cited section 830.8. (*Callahan I, supra*, 240 Cal.App.2d. at p. 704; see *id.* at pp. 698–704.) The court stated only that the immunity does not apply "when a warning sign is

14

necessary to warn of a concealed trap." (*Ibid.*) The court thus did not affirm a finding of a trap.

On remand in *Callahan*, moreover, the city secured a summary judgment. (*Callahan v. City and County of San Francisco* (1971) 15 Cal.App.3d 374, 375.) The appellate court affirmed on grounds including a lack of evidence that a dangerous condition existed. (*Id.* at pp. 379–380, citing § 830.6.) The court relied on statistical evidence of a lack of accidents at the site and on the fact other drivers facing "exactly the same conditions" at the same time on the night at issue had been able to stop. (*Ibid.*)

Other than the statistics regarding secondary collisions at accident sites, plaintiffs cite no facts regarding other accidents at the same location. Further, Williams was traveling in exactly the same conditions as Walia a few minutes earlier but was able to stop.

A leading concealed trap case, *Cameron v. State of California* (1971) 7 Cal.3d 318, offers a telling contrast to this case. The Supreme Court held the state could be liable for injuries caused by failing to warn of a dangerous "S" curve. (*Id.* at pp. 323–324.) The danger involved the curve's inconsistent banking. (*Id.* at p. 323.) It changed abruptly in a way that could make a car roll, but "a driver entering the curve could not ascertain the existence of this change . . . and thereby determine the proper speed to negotiate the curve, until already committed to the curve." (*Ibid.*) A driver might then "find himself trapped" and unable to negotiate the curve, despite proceeding at a lawful speed with due care. (*Ibid.*) Similarly, in *Anderson v. City of Thousand Oaks* (1976) 65 Cal.App.3d 82, no signs warned of a curve with a design speed 20 mph below the speed limit, so "even a cautious driver might well commit himself to the curve" at an unsafe speed. (*Id.* at p. 93.) And in *Feingold v. County of Los Angeles* (1967) 254 Cal.App.2d 622, a promontory

adjacent to an intersection kept drivers in two directions from seeing each other until they were "committed to the intersection." (*Id.* at p. 625.)

If a dangerous condition of public property existed that contributed to Walia's accident, Caltrans is immune from liability due to the failure to warn and no concealed trap existed.

### C. Plaintiffs' Procedural Arguments Fail.

Plaintiffs make two meritless procedural challenges to the summary judgment. First, noting that their responses to discovery were not "factually devoid," they contend Caltrans failed to shift the burden of production to them. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851.) But while Caltrans submitted plaintiffs' responses to interrogatories asking them to state the facts amounting to a dangerous condition, its purpose was not to shift the burden of production by showing they lacked evidence to prove the facts they alleged. (Cf. *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 106–107 [summary judgment proper in asbestos case, as discovery responses identified no evidence of exposure to defendant's products].) Caltrans offered the responses to identify all the facts asserted by plaintiffs—in their complaint and in discovery—in order to show that the facts, even if proven, cannot amount to a dangerous condition as a matter of law.

A court may make that determination as a matter of law. (§ 830.2.) Many opinions confirm the propriety of so doing on summary judgment or even demurrer if, as here, all relevant facts are undisputed or assumed to be as plaintiffs allege. (See, e.g., *Zelig*, *supra*, 27 Cal.4th at p. 1137 [demurrer]; *Brenner v. City of El Cajon*, *supra*, 113 Cal.App.4th at p. 443 [same]; *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1348 [summary judgment].)

Plaintiffs also contend summary judgment was improper because they disputed a fact asserted in Caltrans's separate statement—namely, that it closed I-80 east before Walia's accident.  But we will not reverse a summary judgment because the opposing party disputed a fact in the separate statement that was not material to the issue on which judgment was granted. (*Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 773.)  Plaintiffs cite a decision holding that, by including a fact in its separate statement, a party implicitly concedes its materiality.  (*Insalaco v. Hope Lutheran Church of West Contra Costa County* (2020) 49 Cal.App.5th 506, 521–522, disagreed with on other ground by *Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 155; accord, *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 252 [dictum].)  But *Insalaco* shows only that a court has discretion to hold a party to such a concession.  (*Insalaco*, at pp. 521–522.)  It does not follow that a party's concession of materiality can ever *bind* a court to treat as material a fact that is not.  (See *Desny v. Wilder* (1956) 46 Cal.2d 715, 729 [court is not bound to accept parties' concession on question of law].)  Here, whether Caltrans effected a closure of I-80 east is immaterial to its right to judgment as a matter of law because, even assuming it did not do so, the facts plaintiffs identify cannot amount to a dangerous condition as a matter of law.

## III.  DISPOSITION

The judgment is affirmed.  Caltrans is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

GETTY, J.*

WE CONCUR:

HUMES, P. J.

BANKE, J.

A165798

---

* Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.